UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LORI A. MOSES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| | ) No. 2:13-cv-00235-JMS-MJD |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Lori A. Moses applied for supplemental security income ("SSI") from the Social Security Administration ("SSA") on May 26, 2010, alleging a disability onset date of March 5, 2010. Her application for SSI was denied on July 27, 2010, and denied again after reconsideration on September 9, 2010. A hearing was held on November 28, 2011, in front of Administrative Law Judge Edward P. Studzinski (the "ALJ"), who determined that Ms. Moses was not entitled to receive SSI. [Filing No. 12-2 at 14-25.] The Appeals Council denied review, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Ms. Moses has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review her denial of benefits. [Filing No. 1.]

**I. BACKGROUND**

Ms. Moses was forty-three years old as of her onset date. [Filing No. 12-6 at 9.] Previously, she had worked as a Certified Nursing Assistant since 1998, with some earlier experience in fast food and factory work. [Filing No. 12-6 at 4.] Ms. Moses claims she has been

disabled since March 5, 2010, because of a variety of physical impairments that will be discussed as necessary below.[1] [Filing No. 12-6 at 3.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on December 22, 2011. [Filing No. 12-2 at 14-25.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Moses had not engaged in substantial gainful activity[2] after the alleged disability onset date. [Filing No. 12-2 at 16.]

- At Step Two, the ALJ found that Ms. Moses suffered from the severe impairments of a history of deep vein thrombosis and venous insufficiency in the lower extremities, sleep apnea, asthma, and obesity. [Filing No. 12-2 at 16.]

- At Step Three, the ALJ found that Ms. Moses did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 12-2 at 17.] The ALJ concluded that Ms. Moses had the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds frequently, to stand or walk at least two hours in an eight-hour workday, to sit for six hours in an eight-hour workday, to only occasionally climb, balance, stoop, kneel, crouch, and crawl. He also concluded that Ms. Moses should be able to alternate between sitting and standing as needed without having to abandon her work station; that she should never climb ladders, ropes, or

---

[1] Ms. Moses detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. [Filing No. 25 at 2.] Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Moses, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

scaffolds; and that she should avoid concentrated exposure to cold, heat, humidity, and irritants such as fumes, dust, and gas. [Filing No. 12-2 at 18.]

- At Step Four, the ALJ found that Ms. Moses was unable to perform any of her past relevant work. [Filing No. 12-2 at 23.]

- At Step Five, the ALJ found that, considering Ms. Moses' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Specifically, the ALJ found Ms. Moses would be capable of working as a phone information clerk, food and beverage order clerk, or final assembler. [Filing No. 12-2 at 23-24.]

Based on these findings, the ALJ concluded that Ms. Moses was not disabled. [Filing No. 12-2 at 24.] Ms. Moses requested that the Appeals Council review the ALJ's decision, but on March 28, 2013, the Council denied that request. [Filing No. 12-2 at 5.] That decision is the final decision of the Commissioner for purposes of judicial review, and Ms. Moses subsequently sought relief from this Court. [Filing No. 1.]

## II. STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it

only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can [she] perform h[er] past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). "An affirmative answer leads either to the next step, or, on Steps Three and Five, to a finding that the claimant is disabled. A negative answer at any point, other than Step Three, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The

burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

### III. DISCUSSION

Ms. Moses raises three main arguments on appeal: first, that her chronic venous insufficiency meets Listing 4.11, [Filing No. 19 at 13-16]; second, that the ALJ erroneously rejected an examining physician's opinion and a treating nurse practitioner's opinion in favor of a non-examining physician's opinion, [Filing No. 19 at 16-21]; and third, that the ALJ erred by making an adverse credibility finding, [Filing No. 19 at 21-22].

**A. Listing 4.11 (Chronic Venous Insufficiency)**

Ms. Moses argues that the ALJ erred by not concluding that she met Listing 4.11. [Filing No. 19 at 14-16.] She further contends that if the ALJ was unsure whether she met that listing, he should have consulted a medical expert. [Filing No. 19 at 16.]

In response, the Commissioner admits that the ALJ's analysis was "admittedly terse." [Filing No. 25 at 4.] She argues, however, that there is no evidence that Ms. Moses met either of the two additional criteria set forth in Listing 4.11. [Filing No. 25 at 4-5.] The Commissioner contends that the ALJ did not need to consult a medical expert because he was not uncertain about his reasonable, supported conclusion. [Filing No. 25 at 5.]

If a claimant's impairment or combination of impairments meets or medically equals the criteria of one of a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(d). The burden is on the claimant to present evidence showing that her impairments meet a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Listing 4.11 requires "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system" combined with either (A) "extensive

5

brawny edema" on certain areas of the leg or (B) superficial varicosities, statis dermatitis, and "either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." [Disability Evaluation Under Social Security, Section 4.11](). The parties do not dispute that Ms. Moses met the threshold requirement of chronic venous insufficiency. [[Filing No. 25 at 4](); [Filing No. 29 at 2]().] The parties dispute, however, whether she presented evidence that she met the additional criteria required by either [Listing 4.11A]() or [4.11B]().

At the hearing, Ms. Moses' counsel expressly conceded that he did not believe that Ms. Moses' impairments met or medically equaled any listed impairment. [[Filing No. 12-2 at 36]() ("ALJ: Okay. Are you contending that a listed impairment is met or equaled? Atty: No, Your Honor, the theory of this case I believe, I don't think any of her impairments taken individually prevent work. I think taken together [they] prevent work on a substantial gainful basis.").] The ALJ pointed to counsel's concession in his opinion, but still considered [Listing 4.11](). [[Filing No. 12-2 at 17-18]().] He noted that [Listing 4.11]() related to chronic venous insufficiency but that there is no evidence in the record that Ms. Moses met the additional criteria set forth in that listing, specifically "incompetency or obstruction of the deep venous system of the lower extremity with extensive brawny edema or superficial varicosities or statis dermatitis with either recurrent or persistent ulceration." [[Filing No. 12-2 at 18]().]

Ms. Moses makes a passing allegation that she "arguably" medically equals [Listing 4.11A]() because she has been diagnosed with lipodermatosclerosis, which she contends is similar to brawny edema. [[Filing No. 19 at 16]().] But Ms. Moses ignores that [Listing 4.11A]() requires "extensive brawny edema" and she was often described as having no edema or mild edema. [[Filing No. 12-10 at 59](); [Filing No. 12-10 at 64](); [Filing No. 12-10 at 66]().] In fact, the only type of edema identified in Ms. Moses' records is pitted edema, [[Filing No. 12-9 at 49]](), which [Listing]()

6

400G(3) expressly says "does not satisfy the requirements of 4.11A." Additionally, Dr. Shuyan Wang opined that Ms. Moses did not have brawny edema. [Filing No. 12-7 at 111.] Therefore, Ms. Moses' cursory argument that she arguably medically equals Listing 4.11A fails.

Ms. Moses focuses more heavily on her contention that she meets Listing 4.11B. [Filing No. 19 at 14-16.] Listing 4.11B requires "recurrent ulceration or persistent ulceration." But Ms. Moses admits that she "did not have lesions described as ulcers." [Filing No. 19 at 15; *see also* Filing No. 12-10 at 57 (provider's report that "she does not have leg ulcers"); Filing No. 12-7 at 7, 8, 10.] She argues, however, that she meets Listing 4.11B because she had atrophie blanche, which involves skin lesions that are known to break down and form ulcers. [Filing No. 19 at 15.] But to "meet" a listing, a claimant must satisfy all of the criteria of the listing. 20 C.F.R. § 404.1525(c)(3). By Ms. Moses' own admission, she does not satisfy the ulceration criteria, and the medical evidence further supports that conclusion. [*See, e.g.*, Filing No. 12-7 at 7, 8, 10 (medical records noting a lack of ulcers on multiple occasions); Filing No. 12-10 at 57 (provider's report that "she does not have leg ulcers").] Thus, the ALJ's conclusion that Ms. Moses did not meet Listing 4.11B was reasonable and supported by substantial evidence.

While the ALJ's analysis regarding Listing 4.11 was, to use the Commissioner's words, "admittedly terse," [Filing No. 25 at 4], the Court believes it was sufficient under the circumstances. Counsel conceded at the hearing that Ms. Moses did not meet any listing, and Ms. Moses has not pointed to sufficient evidence supporting her argument on appeal that she does.

The Court also rejects Ms. Moses' argument that the ALJ should have consulted a medical expert to determine if Ms. Moses met or medically equaled a listing. Agency physicians filled out Disability Determination and Transmittal forms, stating that Ms. Moses was not

disabled. [Filing No. 12-3 at 2-5.] "These forms conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review" and the ALJ "may properly rely upon the opinion of these medical experts" as substantial evidence to support a finding that Ms. Moses did not meet or equal a listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). Ms. Moses has not argued that other opinions conflicted with these forms or that an additional expert opinion was required. Thus, the Court rejects her argument.

### B. Medical Opinions

Ms. Moses contends that the ALJ erred in two respects regarding the weight given to medical opinions. First, she challenges the ALJ's decision to reject the opinion of examining physician Dr. Wang in favor of the opinion of a non-examining physician. [Filing No. 19 at 16.] Second, Ms. Moses contends that the ALJ erred by rejecting the opinion of treating Nurse Practitioner Jane Page. [Filing No. 19 at 19-21.] The Court will address each argument in turn.

#### 1) Dr. Wang

Ms. Moses argues that the ALJ erred by giving limited weight to the opinion of examining physician Dr. Wang in favor of the opinion of non-examining physician Dr. Whitley. [Filing No. 19 at 16-19.] The ALJ gave three reasons for giving Dr. Wang's opinion limited weight—1) evidence received after Dr. Wang's examination showed Ms. Moses' improvement; 2) the equivocality of Dr. Wang's opinion regarding Ms. Moses' functional capacity; and 3) that Dr. Wang is not Ms. Moses' treating source. [Filing No. 12-2 at 20.] Ms. Moses contends that these reasons were insufficient for the ALJ to give Dr. Wang's opinion limited weight. [Filing No. 19 at 17-19 (citing Filing No. 12-2 at 20).]

In response, the Commissioner defends each of the three reasons the ALJ listed for giving Dr. Wang's opinion limited weight. [Filing No. 25 at 12-14.] She contends that the ALJ's analysis was reasonable and sufficiently detailed his reasons for giving Dr. Wang's opinion limited weight. [Filing No. 25 at 12-14.]

Medical opinions are statements from physicians or other acceptable medical sources "that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Generally, the ALJ gives "more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not." 20 C.F.R. § 404.1527(c)(1). The ALJ need not assign controlling weight to the opinion of a nontreating source who examined the claimant but does not have an ongoing treatment relationship with the claimant. *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005); *see also* 20 C.F.R. § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). "Instead, an ALJ is required to determine the weight a nontreating physician's opinion deserves by examining how well [he] supported and explained his opinion, whether his opinion is consistent with the record, whether [he] is a specialist . . . and any other factor of which the ALJ is aware." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

Ms. Moses does not deny that Dr. Wang was a nontreating physician who examined her one time. While she contends that the ALJ rejected Dr. Wang's "opinion as a whole," [Filing No. 19 at 18], that is not true. The ALJ did not outright reject Dr. Wang's opinion but, instead, gave it limited weight for three reasons—there was evidence that Ms. Moses' condition

improved after she saw Dr. Wang, he was equivocal about Ms. Moses' functional limitations, and he was not a treating source familiar with Ms. Moses' ailments over time. [Filing No. 12-2 at 20.] While Ms. Moses challenges these reasons, they are supported by evidence in the record and build a logical bridge between the evidence and the ALJ's decision to give Dr. Wang's opinion limited weight.

First, the ALJ decided to give Dr. Wang's opinion limited weight because "[e]vidence received after this date [of his examination] and at the hearing level suggests that the claimant's condition has improved." [Filing No. 12-2 at 20.] While Ms. Moses criticizes the ALJ for not expressly describing that evidence, [Filing No. 19 at 17], she ignores that another portion of the ALJ's opinion details the evidence of improvement at issue, [Filing No. 12-2 at 19 (citing Filing No. 12-10 at 2-12 (detailing treatment from January 2011 to July 2011 with no significant complaints related to Ms. Moses' lower extremities); Filing No. 12-11 at 2-11 (same regarding treatment from July 2011 to August 2011).] "[I]t is proper to read the ALJ's opinion as a whole" and that the ALJ detailed specific evidence in another portion of his opinion is not reason to disregard it. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).

Second, the ALJ gave Dr. Wang's opinion limited weight because he found Dr. Wang's statement that Ms. Moses "may not be a good candidate for work placement" to be "somewhat equivocal" since it "does not suggest specific functional limitations" and, instead, addresses "an ultimate opinion on 'employability,' which is an issue specifically reserved to the Commissioner." [Filing No. 12-2 at 20.] It is undisputed that the Commissioner is charged with determining the ultimate issues of disability and ability to work. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (citing 20 C.F.R. § 404.1527(e)). "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored," but those opinions "are never

entitled to controlling weight or special significance." SSR 96-5p. Thus, the ALJ did not err by pointing out the equivocality of Dr. Wang's statement or failing to give controlling weight to Dr. Wang's opinion regarding issues reserved to the Commissioner.

Third, Ms. Moses criticizes the ALJ for giving "significant weight" to the opinion of non-examining source Dr. Whitley over the opinion of nontreating source Dr. Wang, who did physically examine Ms. Moses. [Filing No. 19 at 19.] But Ms. Moses ignores that both of these physicians were consulting physicians who did not have an ongoing relationship with Ms. Moses. While the ALJ "generally" gives more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not, that rule is not absolute. 20 C.F.R. § 404.1527(c)(1). The ALJ need not assign controlling weight to the opinion of a nontreating source, like Dr. Wang, who examines the claimant but does not have an ongoing treatment relationship with her, as long as the ALJ sufficiently explains his decision to do so. *White*, 415 F.3d at 658. The Court concludes that the ALJ sufficiently explained his rationale for giving limited weight to Dr. Wang's opinion, and it rejects Ms. Moses' argument to the contrary.[3]

   2) *Nurse Practitioner Page*

Ms. Moses also challenges the ALJ's decision to give no weight to the opinion of Nurse Practitioner Page. [Filing No. 19 at 19-20.] Ms. Moses argues that the ALJ's finding is at odds with SSR 06-03p, which, according to Ms. Moses, "requires consideration of such opinion evidence even when not from an 'acceptable medical source.'" [Filing No. 19 at 20.]

---

[3] As an aside, the Court notes that the ALJ did not agree with all of Dr. Whitley's conclusions either. [Filing No. 12-2 at 21 ("I do not agree that the evidence supports a limitation to avoid hazards such as unprotected heights.").] The ALJ's opinion demonstrates that he considered both Dr. Wang and Dr. Whitley's opinions in the context of the record as a whole before determining what weight to give each opinion.

11

Ms. Page examined Ms. Moses at least seven times in 2009 and 2010. [Filing No. 12-7 at 34-45.] She also submitted a Medical Source Statement concluding that Ms. Moses was limited to less than sedentary work. [Filing No. 12-8 at 20-27.] However, as the ALJ noted in his decision, Ms. Page is not an "acceptable medical source" because she is not a licensed physician. *See* 20 C.F.R. § 404.1513(a).[4] Ms. Moses contends that the ALJ erroneously rejected Ms. Page's opinion on that basis alone, but the ALJ actually gave Ms. Page's opinion no weight because "more importantly, Ms. Page notes throughout her report that her statements of the claimant's limitations are based on the claimant's own reports, not the medical evidence, or even Ms. Page's observations." [Filing No. 12-2 at 20.] Indeed, Ms. Page made that disclaimer on almost every page of her report. [Filing 12-8 at 22 ("limitations are derived from pt. reporting"); Filing No. 12-8 at 23 ("per pt. report"); Filing No. 12-8 at 24 ("pt report"); Filing No. 12-8 at 25 ("according to patient"); Filing No. 12-8 at 27 ("information per pt").] Because Ms. Page's opinion repeatedly noted that it was based on Ms. Moses' self-reporting, the ALJ did not err by not giving it weight. *See White*, 415 F.3d at 659 (affirming ALJ decision that declined to give controlling weight to opinion that was based on claimant's subjective complaints rather than accepted medical techniques).

### C. The ALJ's Credibility Determination

Ms. Moses argues that the ALJ's negative credibility finding is not supported by substantial evidence. [Filing No. 19 at 21-22.] Although she admits that the ALJ provided reasons to support his adverse credibility finding, Ms. Moses contends that those reasons "fail to

---

[4] Social Security regulations distinguish between acceptable medical sources and other health care providers for three reasons: (1) evidence from acceptable medical sources is needed to establish the existence of a medically determinable impairment; (2) only acceptable medical sources may provide medical opinions; and (3) only acceptable medical sources are considered treating sources. SSR No. 06-03p (citing 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1527(a)(2) and (d), 416.902, 416.913(a), 416.927(a)(2) and (d)).

properly account for the pain and limitations reasonably related to her underlying medically demonstrated impairments." [Filing No. 19 at 21.] Ms. Moses specifically challenges the ALJ's reliance on her "long work history with her impairments," her "conservative at best" treatment, and his alleged failure to consider the impact of her obesity. [Filing No. 19 at 21-22.]

In response, the Commissioner emphasizes the deference this Court pays to an ALJ's credibility finding. [Filing No. 25 at 7.] She responds to each of Ms. Moses' specific challenges to the credibility determination, [Filing No. 25 at 7-10], and further contends that Ms. Moses' arguments fail because the ALJ ultimately credited Ms. Moses' allegations when determining her RFC, [Filing No. 25 at 11]. Therefore, the Commissioner argues that any error in the ALJ's credibility finding is harmless because it did not affect the RFC determination. [Filing No. 25 at 11.]

On reply, Ms. Moses reasserts her specific critiques of the ALJ's credibility determination. [Filing No. 29 at 6-7.] She does not respond to the Commissioner's harmless error argument or point to any effect the credibility finding had on the ALJ's determination of Ms. Moses' RFC. [Filing No. 29 at 6-7.]

The party who "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If the Commissioner makes a strong argument that the error was harmless, "it normally makes sense to ask the party seeking reversal to provide an explanation, say, by marshaling the facts and evidence showing the contrary." *Id.* at 410. An ALJ's errors regarding an adverse credibility finding are harmless if the RFC is not affected. *See Mueller v. Colvin*, 524 F. App'x 282, 285 (7th Cir. 2013) (applying harmless error to ALJ's failure to adequately explain adverse credibility determination because ALJ adopted medical opinion with undisputed restrictions in

13

RFC); *see also* [Beardsley v. Astrue, 2013 WL 5320114, \*7 (N.D. Ind. 2013)](#) ("As a result, any error from these contradictory statements is harmless since it did not affect the ALJ's RFC.");

Even assuming that the ALJ erred as Ms. Moses claims in making the adverse credibility finding, Ms. Moses has not pointed to any way that the alleged errors affected her RFC determination. This could be because the ALJ actually accounted for Ms. Moses' complaints when determining her RFC. For example, Ms. Moses testified that she can stand twenty minutes at a time and sit twenty minutes at a time, [[Filing No. 12-2 at 42-43](#)], and her RFC allows her "to alternate between sitting and standing as needed[,]" [[Filing No. 12-2 at 18](#)]. Ms. Moses testified that excessive heat makes her "pass out" and cold temperatures affect her ability to breathe, [[Filing No. 12-2 at 43](#)], and her RFC allows her to "avoid concentrated exposure to cold[ and] heat[,]" [[Filing No. 12-2 at 18](#)]. Ms. Moses testified that she has to elevate her legs multiple times throughout the day, [[Filing No. 12-2 at 44](#)], and her RFC allows her "to elevate her legs to the 1 foot high level while seated and working," [[Filing No. 12-2 at 18](#)]. Ms. Moses testified that dust, smoke, and heavy odors affect her ability to breathe, [[Filing No. 12-2 at 47](#)], and her RFC allows her to avoid concentrated exposure to "pulmonary irritants such as fumes, odors, dusts, gases, as well as poor ventilation[,]" [[Filing No. 12-2 at 18](#)].

Although the ALJ allegedly erred in the rationale supporting his adverse credibility finding, Ms. Moses does not point to a single way it affected her RFC determination. It was her burden to do so, as the party asserting error. *[Shinseki](#)*, 556 U.S. at 409-10. Therefore, the Court finds any error regarding the credibility determination to be harmless.

## IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for

14

by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed. Appx. 271, 274 (7th Cir. 2010). Furthermore, the standard of review of the Commissioner's denial of benefits is narrow. *Id.* Taken together, the Court can find no legal basis presented by Ms. Moses to overturn the Commissioner's decision. Therefore, the decision below is **AFFIRMED**. Final judgment will be entered accordingly.

**Electronic Distribution via CM/ECF:**

Frederick J. Daley, Jr.
DALEY DISABILITY LAW P.C.
fdaley@fdaleylaw.com

Heather Freeman
DALEY DISABILITY LAW PC
hfreeman@fdaleylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov